(No. 3370—■)

WILLIAM J. HOWARD, INC., A CORPORATION, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 12, 1941.*

*Petition for rehearing denied May 13, 1941.*

FRANCIS C. BLAIR, for claimant.

GEORGE F. BARRETT, Attorney General; MAURICE J. WALSH and MURRAY F. MILNE, Assistant Attorneys General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

William J. Howard, Inc., an Illinois corporation with principal offices in Chicago, filed its claim April 8, 1939 seeking an award of Seven Hundred Sixty-six and 12/100 ($766.12) Dollars for alleged loss and damages due to delayed performance in the painting of bridges alleged to have resulted through the fault of respondent.

The claim represents that on February 2, 1937 it entered into a contract with the Department of Public Works and Buildings of Illinois for the painting of four bridges; that the contract contained the following provision under the heading of "Special Provisions", "Order of Work. No bridge shall be painted until the contractor for Section 2-D has completed the concrete floor slab."

That the said floor slab so specified in Section 2-D was officially completed by the contractor on August 3, 1938; that prior to the official completion of such floor slab, claimant was informed by letter on July 9, 1938 that the contractor had completed the floor slab on three of the bridges of said project and expected to finish concreting the fourth bridge on July 16, 1938, and that claimant might start its paint crew any time thereafter.

That subsequent to the execution of its contract and after receiving the above letter, claimant began its work on July 25, 1938 and complied with all the terms thereof, and that all the work called for under the contract was completed by it on October 5, 1938; that it thereupon submitted its bill to respondent for Two Thousand Three Hundred Forty-four and 73/100 ($2,344.73) Dollars; that respondent has paid the sum of Two Thousand One Hundred Ten and 26/100 ($2,110.26) Dollars, leaving a balance of Two Hundred Thirty-four and 47/100 ($234.47) Dollars, which has been tendered to claimant, but which the latter has rejected until its claim for damages and loss under the contract has been determined by the court. The admitted balance of Two Hundred Thirty-four and 47/100 ($234.47) Dollars is not involved in this claim.

Claimant further contends that although its contract provided for no certain date upon which the preliminary work or concrete slab work on bridges should be completed, that nevertheless on October 2, 1936, at which time bids for the several types of work including the painting were submitted and opened, said bids for said sections each contained a stated number of days during which time work covered by each section was to have been completed, to-wit: Section 2-B, 150 days, Section 2-E, 70 days, and Section 2-D, 95 days, or a total of 215 days (approximately seven months); that based upon these statements of time so specified by respondent within which the work to be done prior to the painting was to be completed, claimant was led to believe that respondent proposed to and would accept such bids and would see that such preliminary work prior to the painting was started and progressed in accordance with stipulated time periods, so that all slab structure and concrete slab work would be completed in ample time for claimant to begin its work under Section 2-P not later than October 1, 1937 and might thus complete its painting work during that year.

Claimant further contends that at the time of the execution of the contract and claimant's completion thereof, the union scale of Journeymen Painters in the Springfield District was $1.25 per hour, and that claimant's contract price was figured on that basis; that at the same time the rate in the Chicago District was $1.66 2/3 per hour; that during the month of January, 1938, a new rule was adopted by such

union that regardless of local affiliation, no journeyman painter would be permitted to work in excess of thirty (30) hours per week and in accordance with the rules adopted by the union to work within the United States, and that contractors would have to pay the highest scale provided by the local union nearest the site of the work or within whose jurisdiction the contractor's main office was located. That on November 27, 1936 respondent rejected the bids previously submitted on substructure work (Section 2-B), and that new bids on such substructures were not received by respondent until January 8th, 1937, and the contract therefor was not executed until January 18, 1937, thereby causing a delay of over three and one-half (3½) months in the commencement of such substructure work; that claimant did not know of such new bids and the resultant delay, until long after its contract for painting had been accepted by respondent; that such substructure work was not actually begun until March 8, 1937 and was not completed until November 15, 1937, being a period of two hundred fifty-three (253) days from the commencement of the work and ninety-eight (98) days after the time granted by extension; that such delay was caused by respondent's failure to secure the necessary right-af-way for the completion of such work.

The claim further recites that claimant is informed and believes that the instructions given by respondent to the contractor for substructure work specifically provided that the respondent should not be liable in damages to the contractor for any delay or failure to secure proper right-of-way necessary for the commencement or completion of his section of the work, but that no such instructions or reservation was given or made by respondent in accepting the bid of claimant or others on other sections of such project; that because of the delay to secure right-of-way, your claimant although at all times ready and willing during the year 1937, could not commence its work under Section 2-P of said project until July 25, 1938, being a period of six hundred sixty-one (661) days (1 yr. 10 months) after the opening of the bids on said project, and a year and six months after such contract was awarded to claimant; that such lapse of time was unnecessary, and unreasonable and not intended or contemplated by claimant or respondent at the time its contract was entered into, and that such delay resulted in the damages stated; that

the delay which prevented claimant from commencing its work until July 25, 1938, compelled it to pay $1.66 2/3 per hour for Union labor employed instead of $1.25 per hour; that in addition, it was allowed to work its men only six hours per day instead of eight hours as had been the rule of the Union prior to January, 1938; that the delay in time also compelled claimant to employ men from the Springfield District, who, because of their lack of training, had to be trained by claimant on the job.

The Bill of Particulars recites the specific damage as the difference between $1.66 2/3 per hour and $1.25 per hour for 1,527 man hours—$636.25. Insurance and Social Security on $636.25 increased wages—$129.87—total amount of claim, $766.12.

Respondent's position is that there was no undue or unreasonable delay in the prior construction work; such delays as took place were provided for by the contract and that there is no proof in the record establishing that the greater expenses incurred by claimant were caused by any delay which did take place; and further that claimant should have protected himself against such damage as now complained of by insisting on a provision in the contract to protect it.

Before claimant could perform the painting work, required under its contract, it was necessary that all construction and concrete work should be finished. The preliminary contracts for the latter work had protecting provisions therein against delays in obtaining right-of-way. No commencement or final date was fixed for the commence of work by claimant under its contract, other than the following provision: *"Order of work.* No bridge shall be painted until the contractor for Section 2-D has completed the concrete floor slab."

It appears from the record that claimant was notified when the preliminary work was out of the way and the time had arrived at which claimant could begin his work. There was no provision in the contract by which he could anticipate protection against the raise in wage incident to a change of union scale of pay or union change in working hours. Any damage which claimant suffered resulted directly from such changes, and not from any violation of the terms of the contract by the State.

"Where a contract provides that certain contract work shall not commence until a preceding contractor has progressed to a certain point in construction, the subsequent contractor cannot claim damages caused by delay in erection where the State did not cause the delay."

O'Keefe vs. The State, 10 C. C. 480.

An award is denied and the claim is hereby dismissed.